IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

JESUS LOPEZ PANTOJAS,

Defendant.

CRIMINAL NO. 07- 175 (ADC)

## REPORT AND RECOMMENDATION

### INTRODUCTION

Defendant Jesús López Pantojas (hereinafter "López Pantojas") filed a Motion to Suppress Evidence seized, as a result of the issuance of a search warrant and a subsequent complaint by state court, which evidence now serves as evidence in this federal criminal indictment.  (**Docket No. 38**).  The government filed its opposition and attached, contrary to defendant who limited his  motion to counsel's submissions, the warrant application, as well as the sworn statements and the search warrants authorized by a state court judge which are related to this case.  (**Docket No. 40**).

On September 19, 2007, the Court referred these motions to this Magistrate Judge for report and recommendation  (**Docket Nos.  42, 43**).

We find there is no need in this case for an evidentiary hearing because defendant failed to meet the criteria under <u>Franks v. Delaware,</u> 438 U.S. 154, 98 S.Ct. 2674 (1978). Thus, in accordance with the discussion below, it is recommended to the court that defendant's Motion to Suppress be DENIED.

## GENERAL BACKGROUND

Defendant López Pantojas was initially charged in a federal criminal complaint supported by Drug Enforcement Administration ("DEA") Agent Pedro J. Pérez' affidavit which incorporated the findings of Puerto Rico Police Agent William Rosario Fontánez' (hereinafter "PRPO Rosario Fontánez") investigation and the issuance of state search warrants.  On March 29, 2007, these search warrants were executed at defendant's residence at Boulevard del Río, Apartment 126A, Santa Rosa III, Guaynabo, Puerto Rico and two (2) motor vehicles; to wit, a red Dodge Ram pick-up and a Mitsubishi Diamante.   As a result of the searches and seizure, thereunder of approximately three kilograms of a substance containing a detectable amount of cocaine and a loaded Sig Sauer 9mm pistol, a United States Magistrate Judge authorized a federal criminal complaint against defendant López Pantojas for violation of the controlled substance act and for possession of a firearm and ammunition involving a controlled substance violation.  These federal offenses constitute violations to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) and to Title 18, United States Code, Section 924(c)(1)(A)(I).  On April 11, 2007, a preliminary examination was conducted and the presiding Magistrate Judge found probable cause for above federal violations and referred the matter to a Grand Jury.  On April 19, 2007, a Grand Jury charged defendant López Pantojas with a two-count indictment related to violations of the controlled substance act and the use of the firearm in the commission of same under the above provisions.

United States v.  Jesús López Pantojas
Criminal No. 07-175(ADC)
Report and Recommendation
Page No. 3

## LEGAL DISCUSSION

Defendant López Pantojas  submits, based on counsel's arguments and without requesting an evidentiary hearing, the evidence seized from his motor vehicle and his residence should be suppressed.   In support of defendant's request, he avers the facts regarding the law enforcement agent's surveillance at the site, as supported by police reports and documents which were not submitted with defendant's motion, provide grounds to contest the issuance of these search warrants for lack of veracity or credibility, undisclosed information or reliability of the informant, no independent police investigation to corroborate the information tip and no affirmative allegation from the affiant to support probable cause.   Since defendant López Pantojas has not requested an evidentiary hearing and even if so, has not met the burden to be entitled to one, we proceed to discuss the grounds alleged by defendant seeking suppression of the evidence.

Defendant López Pantojas argues,  as was explained by PRPO Rosario Fontánez, that PRPO Rosario Fontánez had been assigned an investigation on March 23, 2007,  regarding allegations of drug activities at the residence of an individual aka "Daniel", who is light skin, stocky, 35 to 40 years old, located at Boulevard del Río Apartment Complex, Apartment 126A in Santa Rosa III, Guaynabo, Puerto Rico.  PRPO Rosario Fontánez' affidavit indicates Sergeant Rodríguez had received the information as to said address and the description of the individual known then as "Daniel", who was utilizing the residence, a red Dodge Ram pick-up, and a Mitsubishi Diamante for drug activities.  PRPO Rosario Fontánez was assigned a confidential

United States v. Jesús López Pantojas
Criminal No. 07-175(ADC)
Report and Recommendation
Page No. 4

vehicle and he arrived at the multi-apartment residential location with another state agent. Upon being granted authorization by the security officer and an unknown person, PRPO Rosario Fontánez accessed what counsel for defendant considers was a private property without consent of the administrator or the owner of the apartment complex. However, PRPO Rosario Fontánez did not make any observations that day and left. On March 24, 2007, while PRPO Rosario Fontánez continued his investigation he went on foot while his co-worker Meléndez stayed in the vehicle and PRPO Rosario Fontánez observed a red Dodge Ram around 10:15 am arriving at the parking lot of the target apartment. He noticed an individual resembling the description provided by Sergeant Rodríguez, which the affidavit indicates was a light skin, stocky, 35 to 40 years old male, who exited the vehicle from the driver's side, going around the vehicle, opening the passenger's side door, and withdrawing a bag. PRPO Rosario Fontánez further described in the affidavit he observed this individual extract a black pistol and a short rifle from the vehicle which he then deposited inside the bag. Additionally, PRPO Agent Rosario Fontánez also noticed the individual exited the vehicle with two (2) rectangular objects which were described as two (2) kilograms of cocaine, without further evaluation. The described individual, later identified as defendant López Pantojas, proceeded to enter the apartment dwelling at 126A. On March 26, 2007, PRPO Rosario Fontánez continued his investigation.

Counsel for defendant López Pantojas' avers the affidavit does not indicate the law enforcement agent sought authorization to enter the apartment complex that day or the day

United States v.  Jesús López Pantojas
Criminal No. 07-175(ADC)
Report and Recommendation
Page No. 5

before.  PRPO Rosario Fontánez entered the complex and observed an unidentified individual, a black male, heavy built, walking through the complex area, who exited the apartment at 126A and then entered in a gray Mitsubishi Diamante motor vehicle with a bag.  A car to car surveillance followed and PRPO Rosario Fontánez noticed this other individual driving to the Vista Hermosa Housing Project, engaging in conversations with several individuals, whose descriptions, counsel for defendant submits, were not indicated in the affidavit.  This unidentified individual then returned to the trunk  area of the Mitsubishi and extracted a bag which was transferred to the other unidentified individual which PRPO Rosario Fontánez observed to be two (2) plastic transparent bags containing a white powdery substance identified as cocaine.

On the above discussed summary of what PRPO Rosario Fontánez relates, defendant López Pantojas submits that, based on the police reports and documents supporting the issuance of the complaint and search warrants, there are grounds to contest their issuance. Defendant further argues there are no specific statement as to the information tip or the identity of the person who initially complained of drug trafficking activities being conducted at Boulevard del Río complex and no veracity or credibility as to the origin of the information provided by Sgt. Rodríguez.  On account of the above discussed premises, defendant López Pantojas seeks suppression of the drugs and the firearm seized.

The government's response in opposition submits defendant López Pantojas conveniently fails to discuss PRPO Rosario Fontánez' first-hand observations and impressions

United States v.  Jesús López Pantojas
Criminal No. 07-175(ADC)
Report and Recommendation
Page No. 6

as to the criminal activities which served as the basis for the affidavit in support of the search

warrants obtained and the resulting evidence seized.   PRPO Rosario Fontánez observed, while

conducting the surveillance of the site and individual previously informed by Sergeant

Rodríguez, who was described as wearing blue jeans and a blue shirt at the time, that on March

23-24, 2007, defendant arrived to apartment 126A in the red Dodge Ram pickup truck with

license plate 793-112 and removed a black bag from the vehicle, a pistol and a rifle.   PRPO

Rosario Fontánez observed when this individual placed these weapons inside the black bag.

The individual also removed from the back door of the red Dodge Ram pick-up  two gray

packages wrapped in block style which the officer, in his experience, believed to be two (2) kilos

of cocaine.   PRPO Rosario Fontánez further observed defendant López Pantojas returned to

the apartment.   On March 26, 2007, PRPO Rosario Fontánez observed during his surveillance

of Boulevard del Río, Apartment 126A, another individual, who was dark skin, with short black

hair, stocky, short, wearing blue jeans and a gray shirt,  retrieving a big rag paper bag and

placing it inside the trunk of a Mitsubishi Diamante (another vehicle described by the

informant), holding license plates BFR-155.   PRPO Rosario Fontánez followed the individual

while driving on Road 177 towards Guaynabo and the Martínez Nadal Expressway, heading

towards San Juan.   The individual in the Mitsubishi Diamante got out on Central Avenue and

arrived at a traffic light where he made a right turn towards the Puerto Nuevo Police

Headquarters.   He continued until he arrived at the last entrance of the Vista Hermosa Housing

Project and up to the last entrance where he made a right turn and entered the public housing

area.  The individual then continued straight until the end and made a right turn.  PRPO

Rosario Fontánez described also in the affidavit, while following the above individual, how

PRPO Rosario Fontánez turned left and parked up ahead for being aware there is a known drug

point in the area.  From his vantage point, PRPO Rosario Fontánez saw the individual park up

ahead on the left hand and get off the Mitsubishi Diamante.  After the individual exited the

vehicle described as a gray Mitsubishi Diamante, he spoke with other individuals, thereafter

removing the bag from the trunk and giving it to one of the individuals he was speaking to, who

was observed to remove two (2) transparent, medium size bags with a white powdery substance

inside of what PRPO Officer Rosario Fontánez believed to be cocaine.

On the basis of these observations, which confirmed the previous tip that originated the

surveillance and investigation at the site, PRPO Rosario Fontánez sought and obtained a state

search warrant for the apartment 126A, for the red Dodge pickup with license plate 793-112

and for the gray Mitsubishi Diamante with license place BRF-155.

Within the above described and properly documented scenario we shall now discuss

defendant López Pantojas' attempt to suppress the evidence seized as a result of the state

warrants.  **A.  An Evidentiary Hearing is not Warranted**.

A defendant must be able to clear the reckless disregard hurdle to be entitled to a

hearing.  A hearing will be denied if defendant fails to make the requisite substantial preliminary

showing that, absent the false information, the affidavit contained insufficient evidence to

United States v.  Jesús López Pantojas
Criminal No. 07-175(ADC)
Report and Recommendation
Page No. 8

support a finding of probable cause. Franks v. Delaware, 438 U.S. at 171-72.  *See* United States v. Ranney,  298 F.3d 74, 78 (1ˢᵗ Cir. 2002).

A Franks hearing is warranted where the defendant makes a "substantial preliminary showing" that (1) a false statement,(2) knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and (3) the allegedly false statement is necessary to the finding of probable cause. *See* Franks, 438 U.S. at 155-56, 98 S.Ct. 2674. Because defendant López Pantojas at no time claims the statement in support of the search was made with actual knowledge of its falsity, we consider only whether it was made with reckless disregard for the truth and, if it was, whether it was necessary to the finding of probable cause. United States v. Adams,  305 F.3d 30 (1ˢᵗ Cir. 2002).

**1. Reckless Disregard for the Truth.**

To prove reckless disregard for the truth, the defendant must prove that the affiant "in fact entertained serious doubts as to the truth" of the allegations. United States v. Williams, 737 F.2d 594, 602 (7ᵗʰ Cir. 1984) (agreeing with United States v. Davis, 617 F.2d 677, 694 (D.C. Cir.1979) (holding that the First Amendment definition should be applied by analogy in the Franks setting); *see also* Beard v. City of Northglenn, 24 F.3d 110, 116 (10ᵗʰ Cir. 1994) (same). Recklessness may be inferred "from circumstances evincing obvious reasons to doubt the veracity of the allegations." Williams, 737 F.2d at 602.

Defendant López Pantojas has failed to show circumstances indicating that, *except for* arguments of counsel since the supporting affidavit was not included with the motion to

United States v.  Jesús López Pantojas
Criminal No. 07-175(ADC)
Report and Recommendation
Page No. 9

suppress, it lacked corroboration of the information tip which led PRPO Rosario Fontánez to seek a search warrant from Municipal State Judge Lorraine M. Biaggi Trigo.  Under these circumstances, the affidavit summary as referred by defense counsel's arguments  does not amount to reckless disregard that must be established for a Frank's hearing. United States v. Dale, 991 F.2d 819, 844 (D.C.Cir.1993) ("failure to investigate fully is not evidence of an affiant's reckless disregard for the truth.").

## 2. Probable Cause Standard.

A material omission of information may also trigger a Franks hearing. *See* United States v. Hadfield, 918 F.2d 987, 992 (1st Cir.1990). Therefore, one must consider whether defendant has made "a substantial preliminary showing" that the  omissions he identifies were "made knowingly and intentionally" or "with reckless disregard for the truth" and whether the omissions were "necessary to the finding of probable cause." Franks, 438 U.S. at 155-56, 98 S.Ct. 2674.

Defendant López Pantojas has also failed to make the requisite substantial preliminary showing that, absent the alleged false uncorroborated information, the affidavit contained insufficient evidence to support a finding of probable cause under the Franks' rationale.  *See* Franks, 438 U.S. at 171-72, 98 S.Ct. 2674.   Courts have noted an important difference between the "necessary" inquiries when the challenge is to the omission of an allegedly material fact rather than to the inclusion of an allegedly false material statement. With an omission, the inquiry is whether its inclusion in an affidavit would have led to a negative finding by the

magistrate on probable cause. If a false statement is in the affidavit, the inquiry is whether its inclusion was necessary for a positive finding by the magistrate on probable cause.

Defendant López Pantojas' averment that PRPO Rosario Fontánez failed to include the descriptions of other individuals he observed during his surveillance of Boulevard del Río complex, presumably those related with the Mitsubishi Diamante and who thereafter held a meeting with other individuals at Vista Hermosa Public Housing Project, are inconsequential for the search warrants obtained as to the apartment where defendant López Rosario was observed and as to the red Dodge Ram vehicle.  As to the search of the gray Mitsubishi Diamante, defendant López Pantojas makes no discussion whatsoever in the motion to suppress in regard to this Mitsubishi Diamante vehicle, not even a statement indicating what, if anything, was obtained from same which he seeks to suppress or to whom the vehicle belonged which would grant him standing.  As such, defendant López Pantojas has not placed the court in any position to elucidate what are the allegations regarding suppression as to the Mitsubishi Diamante, except that its search is related with the same affidavit and observations made by PRPO Rosario Fontánez on the date of surveillance of apartment 126A and served to sustain PRPO Rosario Fontánez' observations of illegal activities being conducted from said apartment 126A.

Probable cause to search a home exists so long as the underlying affidavit contains information showing a fair probability that evidence of a crime would be found there. U.S.C.A. Const.Amend. 4. *See* United States v. Grant, 218 F.3d 72, 76 (1st Cir. 2000). "[P]robable cause

need not be tantamount to proof beyond a reasonable doubt.... Probability is the touchstone."

United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir.1997) (quoting United States v.

Aguirre, 839 F.2d 854, 857 (1st Cir. 1988)). The probable cause standard does not require any

showing that an officer's belief that evidence will be found in the searched premises "be correct

or more likely true than false." Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535 (1983).

Probable cause to search a home existed so long as the affidavit contained information showing

a "fair probability" that evidence of a crime would be found there. Illinois v. Gates, 462 U.S.

213, 238, 103 S.Ct. 2317 (1983); see Khounsavanh, 113 F.3d at 283; United States v.

Procopio, 88 F.3d 21, 25 (1st Cir. 1996).  See also Grant,  218 F3d at 74.  An affidavit

submitted in support of a search warrant application is presumed valid, see Franks, 438 U.S.

at 171, 98 S.Ct. 2674; United States v. Spinosa, 982 F.2d 620, 626 (1st Cir. 1992) (quoting

Franks), but that presumption may be surmounted by a showing that it contains either (1) a

"false statement [made] knowingly and intentionally, or with reckless disregard for the truth,"

Franks, 438 U.S. at 155, 98 S.Ct. 2674, or (2) "technically accurate statements" that "have been

rendered misleading by material omissions." United States v. Scalia, 993 F.2d 984, 987 (1st

Cir.1993).

Succinctly, to mandate an evidentiary hearing, a defendant must submit more than

conclusory averments and be supported by more than a mere desire to cross-examine. There

must be allegations of deliberate falsehood or of reckless disregard for the truth, and those

allegations must be accompanied by an offer of proof. Defendant should point out specifically

United States v.  Jesús López Pantojas
Criminal No. 07-175(ADC)
Report and Recommendation
Page No. 12

the portion of the warrant affidavit that is claimed to be false; and should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence, satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any non-governmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. Otherwise, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to a hearing.  Franks, 438 U.S. at 171-72, 98 S.Ct. at 2684-85.  Still, material omissions may also be the basis for a Franks hearing. See United States v. Paradis, 802 F.2d 552, 558 (1ˢᵗ Cir. 1986)(allegedly false statements made in affidavit in support of search warrant were not necessary to finding of probable cause and, thus, defendant was not entitled to hearing challenging truthfulness of the statements ); see also United States v. Rumney,  867 F.2d 714, 720 (1ˢᵗ Cir. 1989).[1]

Defendant López Pantojas submitted a sworn statement from an investigator, Mr. Reinaldo Calderón García, as to having visited the Boulevard del Río Apartment Complex, near Apartment 126A, verifying the entrance log shows that on March 24, 2007, two (2) police officers arrived.  The investigator also interviewed the Administrator of the complex who also

---

[1] A district court's determination that a defendant has not made the requisite showing warranting further exploration will be upheld unless clearly erroneous. See United States v. Southard, 700 F.2d 1, 10 (1ˢᵗ Cir. 1983) (citing United States v. Cruz, 594 F.2d 268, 272 (1ˢᵗ Cir.1979), cert. denied, 444 U.S. 898, 100 S.Ct. 205 (1979)).

verified these officers arrived to her office at the time.  Up to this point, the sworn statement of defendant's investigator corroborates the surveillance was indeed conducted at the site of apartment 126A, Boulevard del Río.

The remaining portion of the investigator's statement indicates he had an opportunity to observed the area of parking in front of the apartment 126A and the alleged position of the Dodge Ram from where, in his opinion, it would be impossible to detect any person walking to the entrance of said apartment.  *See Calderón-García's statement of 9-14-2007.*

### 3.  Application to this Case.

The government's opposition states defendant López Pantojas has failed to address the alleged false statement contained in the affidavit in support of the search warrant executed at defendant's residence.  This contention is controverted solely by defendant's premises on the basis of his investigator's claim as to the possibility that PRPO Rosario Fontánez could not have observed the entrance of apartment 126A since the Dodge Ram pick up is very large and is an obstacle to a clear vision.  *Calderón García's statement ¶4.*

Not only is the investigator's hypothesis as to the location of PRPO Rosario Fontánez unclear, but it is just as unclear what precise location the investigator selected to make such averment.  PRPO Rosario Fontánez' affidavit makes reference to having "parked where he was able to see the front of the apartment he was keeping watch over and noticed [at that time] the Pick-up [Dodge Ram] was not there."  Some time thereafter, he observed the "Dodge Ram pick-up with license plate 793-112 arrives and parks facing the apartment being watched."  It

was after the individual entered the apartment door the agent "got out of the official vehicle and verified that the only entrance door where the agent lost sight of him is identified with number 126A."  The investigator's statement does not contradict PRPO Rosario Fontánez' summary of observations during his surveillance nor it is specific enough to establish the impossibility that these observations could not have taken place.

Investigator Calderón García further states that a person located in the main street, outside the complex could not see any movement of vehicles inside the complex and specifically the area where apartment 126A is located.          *Calderón García's statement* ¶5.

Even in the presence of any misstatements which may have been knowingly false or reckless, which are based of defendant's motion and Calderón García's statement limited to the contention as to the door entrance at front of Apartment 126A, same is not considered material and, thus, not affecting the probable cause determination by a detached state court judge.  This averment by Calderón García does not contradict any aspect of PRPO Rosario Fontánez' affidavit in support since the surveillance was not conducted from the main street.  *See* United States v. Vanness, 85 F.3d 661, 662-63 (D.C.Cir.1996) (warrant valid under Leon because false statement not material).   *See also* Franks, 438 U.S. at 171-72, 98 S.Ct. 2674 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."); United States v. Grant, 218 F.3d at 77.

In sum, even taking as truth and without holding an evidentiary hearing to determine such a factual dispute, the proffered evidence is not deemed material for the determination of probable cause by a detached judicial officer.  Although any discrepancy on the descriptions of events might be useful for impeachment of trial testimony, disregarding same would have no bearing on the probable cause determination for purposes of a motion to suppress.

## B.  Additional Grounds to Suppress.

Defendant López Pantojas also refers to the Puerto Rico Rules of Criminal Procedure regarding non-compliance with Rule 234(b)(f), without any further analysis.  The examination of probable cause at federal level is premised on federal law and any deemed violation of state law is not applicable in the case.

Defendant López Pantojas submits general averments as to the undisclosed informant or the reliability of the information he/she had provided, as well as the expectation of privacy in the general area of the apartment complex prior to having obtained a search warrant from a detached state court magistrate.

### 1.  Informant.

Defendant López Pantojas continued to disclaim the reliability and credibility of the alleged informant and/or tipster who provided information to Sergeant Rodríguez and upon whose information the surveillance of the site near Apartment 126A and the described individual fitting defendant's description and the red Dodge Ram pickup truck therein located were set in motion.

For Fourth Amendment purposes, inquiry into the reliability of an informant's tip, like the reasonable suspicion inquiry itself, must be made in light of the totality of the circumstances. While "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of [an informant's] report," these elements "should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case." Gates, 462 U.S. at 230. Even though the tipster in the instant case did not recount the precise physical characteristics of the alleged drug trafficker, he specified the suspect's general description and race – a datum that the police regularly use to facilitate identification, see 4 Wayne R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 9.5(g), at 555-56 n. 376 (4th ed. 2004). The informant also supplied pertinent details about the suspect's whereabouts, activities, location and a description of the vehicle which he would be using, a red Dodge Ram pickup and a Mitsubishi Diamante. All of these events were subsequently verified by PRPO Rosario Fontánez' surveillance at the site and his observations of the described vehicles, as well as the illegal activities he observed at the site.

An informant's reliability may be corroborated by various means, including direct surveillance or circumstantial evidence, or vouchsafed by the affiant-in this case a highly experienced law enforcement officer. *See, e.g* United States v. Scalia, 993 F.2d 984, 987-88 (1st Cir. 1993); United States v. Brown, --- F.3d ----, 2007 WL 2377302 (1st Cir. 2007). Independent corroboration lent further credence to the confidential informant's statements (*i.e.,* the location of the marijuana). *See* United States v. Jorge, 865 F.2d 6, 9 (1st Cir. 1989); *see*

*also* Gates, 462 U.S. at 244, 103 S.Ct. at 2335 ("B*ecause an informant is right about some* things, *he is more probably right about other facts. . ."). See* Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412 (1990) (holding the anonymous tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion for an investigatory stop).

Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if the allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity; however, there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability.  One such feature, as the Court recognizes, is that the tip predicts future conduct of the alleged criminal.  Florida v. J.L. ,529 U.S. 266, 120 S.Ct. 1375 (2000).  For this reason, there is a benefit to an officer's decision to confirm an informant's tip by observing the allegedly illegal activity from a public vantage point.  The officer to verify the tipster's credibility, might have done so in other ways, say, by seeking general information about the tipster's reputation and then obtaining a warrant and searching the apartment. But the chosen method-observing the apartment from a public vantage point-would  more likely have saved an innocent apartment dweller from a physically intrusive, though warrant-based, search if the constitutionally permissible observation revealed no illegal activity. Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469 (1998).

United States v.  Jesús López Pantojas
Criminal No. 07-175(ADC)
Report and Recommendation
Page No. 18

In the instant case, defendant López Pantojas cannot merely rely on the lack of information as to the informant's reliability or even his/her identity to seek suppression since PRPO Rosario Fontánez also held sufficient personal knowledge and exercised proper corroboration through his own surveillance activities as to the events which led him to seek the search warrants for the apartment at 126A and those vehicles he personally observed and described in the affidavit in support of the search warrants.[2]

## 2.  Common Areas of the Apartment Building Complex.

Defendant López Pantojas finally avers PRPO agents did not seek authorization to enter the premises when engaged in surveillance activities which he considers to be a private property.  However, not only defendant's investigator attested to the fact the agents wrote their names in the log book when entering, but also of having interviewed the apartment complex administrator.  Furthermore, the area where the surveillance was being conducted, although not specifically indicated, was clearly outside and in the nearby areas of apartment 126A and somewhere near the adjacent open parking area.  These areas are considered common areas in a multiple apartment dwelling and cannot be raised as having entering the defendant's private dwelling or even his curtilage.

---

[2]  "[A] warrant affidavit [need not contain] an averment of previous reliability, the appropriate inquiry always being whether the informant's *present information* is truthful or reliable." United States v. Cochrane, 896 F.2d 635, 641 (1st Cir.) (citing *United States v. Harris*, 403 U.S. 573, 581-82, 91 S.Ct. 2075, 2080-81 (1971)) (emphasis added), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2627 (1990). In the absence of a prior record of reliability, we have recognized that, where the informant was " *not a professional* ... but a private citizen with *no known criminal record* or other criminal contacts, who came forward on his own ... [,] the informant's story may be more easily accepted...." United States v. Campbell, 732 F.2d 1017, 1019 (1st Cir.1984)

United States v. Jesús López Pantojas
Criminal No. 07-175(ADC)
Report and Recommendation
Page No. 19

As the Court of Appeals for the First Circuit has observed, "the contours of the Fourth Amendment are not coterminous with property and trespass law." Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 64 (1st Cir.2004) (citing Oliver v. United States, 466 U.S. 170, 183-84, 104 S.Ct. 1735(1984)).  In particular, when testing common, or public, areas –those areas to which the public and others, such as law enforcement officers, have access– courts generally hold that a party possesses no reasonable expectation of privacy and that the Fourth Amendment is thus not implicated. See United States v. Hawkins, 139 F.3d 29, 32 (1st Cir.1998) ( "It is now beyond civil in this circuit that a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building."); see also United States v. Nohara, 3 F.3d 1239, 1242 (9th Cir. 1993) ( joining the First, Second, and Eighth Circuits which have rejected this rationale and held an apartment dweller has no reasonable expectation of privacy in the common areas of a building whether the officer trespasses or not."); and United States v. Acosta, 965 F.2d 1248, 1252 (3rd Cir. 1992) (holding that since the inner hallway was easily accessible to tenants, visitors, solicitors, workmen and other members of the public, defendants had no way to exclude anyone and, therefore, could not have reasonably expected their privacy to extend beyond their apartment door); United States v. DeWeese, 632 F.2d 1267, 1270 (5th Cir. 1980) ( finding in an area to which access is freely given to all properly and lawfully within the close, it is apparent that, as to them, a reasonable expectation of privacy does not exist in the common area.).  Many of these cases are commonly referred to as the "apartment cases." See United States v. Anderson, 154 F.3d 1225, 1232 n. 3 (10th Cir. 1998); and see United

States v. Ramirez 145 Fed.Appx. 915 (5th Cir. 2005)(holding defendants possessed no reasonable expectation of privacy in the common balcony area on the second floor above the carport. The area is accessible to anyone and everyone--the upstairs tenants, visitors, solicitors, and even law enforcement officers who might wish to question a second-floor tenant).

Additionally, the Court of Appeals for the First Circuit has also found a defendant could have no expectation of privacy in the common areas of a multi-family building, which included the back porch of the building where the ammunition were kept.  *See* United States v. Paradis, 351 F.3d 21 (1st Cir. 2003) (defendant has no privacy interest and lacked standing to challenge search and seizure of drugs and firearm found in a hole in the basement wall of his apartment building, since the basement was a common area of the building in which defendant had no privacy interest ). *See also* United States v. Brown, 169 F.3d 89, 92 (1st Cir. 1999); United States v. Garner, 338 F.3d 78 (1st Cir. 2003).

In accordance with above discussed, defendant López Pantojas has no standing to submit the alleged illegality of the surveillance conducted from the common area of the apartment building at Boulevard del Río because he held no privacy interest in the area and the claims of Fourth Amendment violation lack merit.

**CONCLUSION**

For all the foregoing reasons, it is recommended to the Court that defendant López Pantojas' Motion To Suppress (Docket No. 38) be DENIED.

United States v. Jesús López Pantojas
Criminal No. 07-175(ADC)
Report and Recommendation
Page No. 21

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order.  Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).  See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 3rd day of October of 2007.


s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE